IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

August 5, 2020 Session

**STATE OF TENNESSEE v. DAWN MICHLITSCH**

**Appeal from the Circuit Court for Henderson County**
**No. 18-117-2 Donald H. Allen, Judge**

_____

**No. W2019-01288-CCA-R3-CD**

_____

The defendant, Dawn Michlitsch, pled guilty to two counts of possession of .5 grams or more of methamphetamine with intent to sell or deliver and one count of possession of drug paraphernalia for which she received an effective sentence of twelve years in the Tennessee Department of Correction. On appeal, the defendant contends the trial court erred in enhancing her sentence and in denying any form of alternative sentencing. Upon our review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Kendall F. Stivers, Assistant Public Defender, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal) and Hayley Johnson, Assistant District Public Defender, Jackson, Tennessee (at trial), for the appellant, Dawn Michlitsch.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Factual and Procedural Background***

*A. Guilty Plea*

On May 31, 2018, the Henderson County grand jury indicted the defendant for two counts of possession of .5 grams or more of methamphetamine with intent to sell or deliver

and one count of possession of drug paraphernalia. Tenn. Code Ann. § 39-17-434; -425. Per the agreement of the parties, the defendant entered a best interest plea to all counts with sentencing to be determined by the trial court.

During the guilty plea hearing, the State recited the facts supporting the defendant's convictions as follows:

> If it please the [c]ourt, Your Honor, in Case No. 18-117-2A, the State would show at trial in this matter that on October 9th of 2017, the defendant in this case did unlawfully and knowingly possess with the intent to sell a controlled substance that being over .5 grams of methamphetamine, a Schedule II controlled substance and also at that time did unlawfully, intentionally, knowingly or recklessly use or possess with the intent to use drug paraphernalia in violation to T[enn]. Code A[nn]. [§]39-17-425.

> Your Honor will recall we had a hearing in this matter regarding the motion to suppress. Officers went to the residence of Mr. Collins who is the codefendant in this case to serve a warrant on Mr. Collins. At that time Mr. Collins had yelled out to the other individuals in the house that the police were there. Officer McCreedy proceeded to the bedroom where he located Ms. Michlitsch along with Chad Scott. There was 8.35 grams of methamphetamine on the table beside them along with digital scales. Given the circumstances and the amount of the drugs at the time and also the paraphernalia in this case, they were then all three were arrested and charged with possession of methamphetamine with intent to sell or deliver and possession of drug paraphernalia for the scales in this case. That did occur in Henderson County.

After hearing the facts supporting the defendant's convictions and determining the defendant entered her plea freely and voluntarily and had knowingly and intelligently waived her rights, the trial court found the defendant guilty of two counts of possession of .5 grams or more of methamphetamine with intent to sell or deliver and one count of possession of drug paraphernalia.

*B. Sentencing Hearing*

During the sentencing hearing, the State introduced a copy of the defendant's presentence report as well as certified copies of four judgments of conviction for the defendant from the State of Oregon.

The defendant then called Pat Hinson as a witness. Ms. Hinson testified she had been involved in jail ministry for the past 10 years. It was through her ministry that Ms. Hinson became acquainted with the defendant. Ms. Hinson noted the defendant was "a little angry" and "hardheaded" when she first arrived; however, Ms. Hinson has seen a "tremendous change" in the defendant over time. According to Ms. Hinson, the defendant has been open and honest and taken "responsibility and accountability" for her actions. The defendant even offered to lead an inmate Bible study once a week. Ms. Hinson stated she believed the defendant would never see a courtroom again if given the chance and the resources.

The defendant also testified on her own behalf. The defendant, who was originally from Oregon, stated she and Chad Scott came to Tennessee in September 2017 to visit a friend, Jason Collins. Mr. Collins and the defendant had been roommates in Oregon. While admitting she possessed the methamphetamine found in Mr. Collins's apartment, the defendant testified she did not intend to sell the drugs. Rather, the defendant stated she was planning on leaving Tennessee and returning to Oregon soon, so she "g[o]t what I could get before I was gone." The defendant also admitted she had been in Tennessee less than a month when she was arrested. While on bond in the instant matter, the defendant failed to appear for her arraignment. According to the defendant, her bail bondsman called her a few days before her court date and told the defendant that her court date had been "cancelled." The defendant was, therefore, completely surprised when she was arrested in Texas months later and served with the Tennessee warrants. The defendant testified she never intended to flee the jurisdiction.

On cross-examination, the defendant admitted there was at least $800 worth of methamphetamine in the apartment when she was arrested despite the fact that neither she, Mr. Scott, nor Mr. Collins had a job at the time. The defendant also stated that she did not know the State of Tennessee had issued a warrant for her arrest when she was in Texas. The defendant fought extradition back to Tennessee based on the advice of counsel.

When questioned by the trial court, the defendant admitted neither she nor Mr. Scott had a valid driver's license when they drove from Oregon to Tennessee. She also admitted she was on probation from the State of Oregon at the time of her arrest in Tennessee on the instant matter. Finally, the defendant testified she was served with the warrants from Tennessee after being arrested in Texas for theft under $500.

At the conclusion of the hearing, the trial court noted that it had reviewed the presentence report, considered the arguments of counsel, the evidence supporting the defendant's plea, the nature and characteristics of the criminal conduct involved, and the statistical information provided by the administrative office of the courts. Concerning the applicable enhancement factors, the trial court found "the defendant does have a previous

history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range." *See* Tenn. Code Ann. § 40-35-114(1). In finding this factor applicable, the trial court recited the defendant's extensive criminal record and gave "great weight" to the factor. The trial court also found enhancement factor (8), the defendant before trial or sentencing in this case failed to comply with the conditions of a sentence involving release into the community, was applicable and gave "great weight to that factor as well." *See Id*. 40-35-114(8). Additionally, the trial court found and gave great weight to the fact the defendant was on probation from the State of Oregon at the time she committed the crimes that are the subject of this appeal. *See Id*. § 40-35-114(13). In doing so, the trial court noted, "She's done that on multiple occasions. While she was on some type of probation or release into the community, she's gone out and committed new offenses, and so I do give great weight to that factor as well."

Concerning the applicable mitigating factors, the trial court gave slight weight to the fact that the defendant's conduct did not cause or threaten serious bodily injury. *See* Tenn. Code Ann. § 40-35113(1). While the trial court also considered as mitigation the fact that the defendant pled guilty, the trial court expressed concern relating to the defendant's credibility, noting the defendant denied the paraphernalia was hers and the trial court's belief that the defendant was covering up for Mr. Collins.

After applying and weighing the applicable enhancment and mitigating factors, the trial court sentenced the defendant to twelve years on each count of possession of methamphetamine with intent to sell or deliver and eleven months and twenty-nine days for possession of drug paraphernalia. The trial court also merged the two counts of possession of methamphetamine and ordered the defendant's sentences in all counts to be served concurrently. The trial court then turned its attention to alternative sentencing. In finding the defendant was not an appropriate candidate for alternative sentencing, the trial court made the following findings,

> Now, in terms of whether or not she is a good candidate for alternative sentencing, I have considered her physical and mental condition which according to her is excellent is what she reported in this report.
>
> I do consider the facts and circumstances of this offense.
>
> I also consider her prior criminal history which again over the last four years or so has been a terrible history involving numerous convictions, drug related offenses, theft offenses and assault convictions, so I find that her criminal history certainly shows that she would not be willing to abide by terms of probation if given the chance.

I also find this to be very important. I find that measures less restrictive than confinement have frequently and recently within the last few years been applied to this defendant without success. I mean, she's simply not followed the rules of probation. I don't find that she would follow the rules of probation. I don't think she's been very truthful and honest here today. I think that reflects very poorly upon her potential for rehabilitation.

I do want to say this. I know she testified on behalf of the defendant, Mr. Collins, basically in my opinion trying to protect Mr. Collins from a conviction. She testified here today before the jury and the jury didn't believe her testimony. They found Mr. Collins guilty of possession of this methamphetamine with intent to sell or deliver even though [the defendant] says that it belonged to her and that Mr. Collins didn't know anything about it. I mean, that was her testimony earlier here today in the codefendant's case. Well, the jury certainly didn't believe that testimony nor do I believe that testimony. You know, the thing is I think before she can ever start having potential for rehabilitation, she has to be truthful about things. I don't think she's been very honest and truthful about Mr. Jason Collins' involvement in this case. I think she simply was trying to testify on his behalf perhaps to protect him from conviction or prosecution and so, again, I think because of her unwillingness to be truthful and honest I think she is not a good candidate for alternative sentencing.

Based on the foregoing, the trial court denied the defendant's request for alternative sentencing and ordered her to serve her twelve-year sentence in confinement. This timely appeal followed.

### *Analysis*

On appeal, the defendant contends the trial court erred in sentencing her. Specifically, the defendant argues "the trial court misapplied enhancement factor (1) when it misclassified [the defendant's] out-of-state convictions as felonies," and "the trial court abused its discretion when it denied alternative sentencing for [the defendant] without considering all statutorily required factors in sentencing." The State submits the trial court properly exercised its discretion in sentencing the defendant. We agree with the State and affirm the judgments of the trial court.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5)

evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See id*. §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

*A. Enhancement Factor*

The defendant contends the trial court erred in applying enhancement factor (1) – the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. Tenn. Code Ann. 40-35-114(1). More specifically, the defendant argues the trial court mischaracterized her convictions from the State of Oregon as felonies, and therefore, placed too great a weight on this factor when determining the defendant's sentence. However, even if the trial court erred in concluding the defendant's Oregon convictions were felonies, such does not make

- 6 -

the enhancement factor inapplicable nor does it amount to an abuse of discretion. Thus, the defendant is not entitled to relief.

As noted by the trial court and admitted by the defendant during the sentencing hearing, the defendant's criminal record consists of four prior drug convictions from the State of Oregon, at least three of which involved methamphetamine, the same drug involved in the instant matter. Even if, as the defendant suggests, the defendant's Oregon convictions were misdemeanors, "[t]his Court has often upheld sentences that were enhanced under this factor when the only prior convictions on a defendant's record were misdemeanors." *State v. James Earnest Smith*, No. W2016-01131-CCA-R3-CD, 2018 WL 446685, at *6 (Tenn. Crim. App. Jan. 16, 2018), *no perm. app. filed*; *see also*, *State v. Demarcus Lashawn Blackman*, No. M2016-01098-CCA-R3-CD, 2017 WL 3084852, at *5-6 (Tenn. Crim. App. July 20, 2017) (finding trial court correctly applied enhancement factor (1) based upon the defendant's prior record of misdemeanor convictions and upholding maximum Range I sentence), *no perm. app. filed*; *State v. Thomas Antonio Ricketts*, No. M2016-00816-CCA-R3-CD, 2017 WL 1830102, at *5 (Tenn. Crim. App. May 5, 2017) (finding no abuse of discretion when trial court enhanced the defendant's Range I sentence based on numerous prior misdemeanor convictions), *no perm. app. filed*. Additionally, the defendant admitted to a history of drug use dating back to 1995 and to the fact that she drove from Oregon to Tennessee without a valid driver's license. *State v. Gabriel Dotson*, No. W2017-01099-CCA-R3-CD, 2018 WL 2175696 (Tenn. Crim. App. May 10, 2018) (when enhancing the defendant's sentence the trial court relied on the fact that the defendant had a history of criminal behavior, in addition to those necessary to establish the appropriate range, noting the defendant had been smoking two joints of marijuana every day for years), *perm. app. denied* (Tenn. Sept. 2018). Thus, the record adequately supports the trial court's finding of a history of criminal convictions or behavior in addition to those necessary to establish the defendant's range. We would also note that even if the use of the defendant's Oregon convictions was erroneous, "a trail court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from" the sentencing guidelines. *Bise*, 380 S.W.3d at 706.

Once the trial court determines the sentencing range, it "is free to select any sentence within the applicable range." Tenn. Code Ann. § 40-35-210 (a), (d); *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Here, our review of the record indicates the trial court imposed a within range sentence after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and evidence of mitigating and enhancement factors. Tenn. Code Ann. §§ 40-35-103(5), -114, -210(b). Therefore, the defendant's sentence is presumed reasonable, and the defendant is not entitled to relief.

*B. Alternative Sentencing*

Next, the defendant contends the trial court erred in not considering community corrections. More specifically, she argues the trial court failed to consider the needs assessment included in her presentence report, her potential for rehabilitation, and her candor. The State submits the trial court properly denied alternative sentencing. Upon our review of the record and the applicable law, we affirm the judgments of the trial court.

The standard of review for questions related to probation or any other alternative sentence, including community corrections, is an abuse of discretion with a presumption of reasonableness for within-range sentences reflecting a decision based upon the principles and purposes of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a) (2014). A defendant who is ineligible for probation might still be a candidate for community corrections. *Id.* § 40-36-106(a)(1)(A) (2014); *see State v. Kendrick*, 10 S.W.3d 650 (Tenn. Crim. App. 1999). A defendant who is a felony offender and would otherwise be unfit for probation due to a history of drug or alcohol abuse or mental health problems and "whose special needs are treatable and could be served best in the community rather than in a correctional institution" may be eligible for community corrections. Tenn. Code Ann. § 40-36-106(c) (2014). The burden of establishing suitability for an alternative sentence rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2018); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the

defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017.

Initially, we address the defendant's claim that the trial court failed to consider community corrections. While the trial court did not specifically use the words "community corrections," the record does not support the defendant's claim. The defendant received an effective sentence of twelve years, and therefore, was not eligible for probation. *See* Tenn. Code Ann. § 40-35-303(a). However, despite the defendant's ineligibility for probation, the trial court, after sentencing the defendant to a term of twelve years, specifically stated it was turning its attention to "whether or not [the defendant] is a good candidate for alternative sentencing." Implicit in the trial court's statement is a consideration of all types of alternative sentencing including community corrections.

Turning to the basis upon which the trial court denied alternative sentencing in this matter, we note that at the outset of the sentencing hearing, the trial court stated it had considered the evidence presented during the guilty plea and sentencing hearings, including the presentence report; the principles of sentencing, including sentencing alternatives; the nature and characteristics of the defendant's criminal conduct, noting methamphetamine is "a serious problem here in Henderson County;" and the defendant's "potential for rehabilitation and also her potential for treatment."

Additionally, the trial court considered the defendant's criminal history, noting that the "last four years or so" included numerous convictions ranging from drug related offenses to theft and assault offenses. The trial court also found "measures less restrictive than confinement have frequently and recently been applied to this defendant without success." Furthermore, the trial court expressed concern with the defendant's history of substance abuse and two prior and relatively recent attempts at treatment. Finally, the trial court found the defendant's claim that all the drugs belonged to her and were not intended for sale or delivery not credible.

The record supports the findings of the trial court and denial of the defendant's request for alternative sentencing. Concerning the trial court's finding that measures less restrictive than confinement had been recently tried and failed, the record reveals that the defendant was on probation from the State of Oregon when she committed the crimes in the instant matter. Additionally, the defendant, while on bond in the instant matter, was charged, convicted, and placed on probation for domestic assault in Henry County, Tennessee. While still on bond in this case and on probation from both Henry County and the State of Oregon, the defendant fled the jurisdiction of Tennessee. Then, while a fugitive from Tennessee, the defendant committed and was arrested for two more crimes in Texas. Clearly, the record supports the trial court's finding that measures less restrictive than confinement have not been successful.

The record likewise supports the trial court's determination that the defendant lacked the potential for rehabilitation. In addition to the defendant's conviction in the instant matter, her record consists of several convictions for possession of methamphetamine and her drug use and addiction dates back to 1995. Additionally, the record reveals the defendant recently participated in two different treatment programs, and yet, continued to use drugs upon leaving those programs.

Finally, the trial court did, despite the defendant's claim to the contrary, consider the defendant's credibility. *See State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) ("Candor is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of" an alternative sentence.). The trial court not only heard the defendant testify during her plea and sentencing hearings and found her claim that all the drugs belonged to her and were not for sale or deliver not credible, but the trial court also heard the defendant testify to the same during Mr. Collins's trial and noted that the jury, by finding Mr. Collins guilty of possession of methamphetamine with intent to sell or deliver, found the defendant not credible. While the defendant argues her testimony was credible, the trial court, upon hearing her testify at her guilty plea and sentencing hearings and Mr. Collins's trial, found to the contrary. A trial court's findings of fact and credibility determinations at sentencing are generally binding on this Court. *State v. Parker*, 932 S.W.2d 945, 956 (Tenn. Crim. App. 1996).

Based on our review, the record supports the court's denial of alternative sentencing. Accordingly, the defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE